J-S37031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.M.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.J.M. | : | |
| | : | |
| Appellant | : | No. 569 EDA 2018 |

Appeal from the Order Entered January 18, 2018
in the Court of Common Pleas of Pike County Civil Division at No(s):
2111-2008-CV

BEFORE:  OLSON, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:              **FILED AUGUST 08, 2018**

Appellant, G.J.M. ("Father"), files this appeal from the order dated and entered January 18, 2018, in the Pike County Court of Common Pleas, awarding him and A.M.M. ("Mother") shared legal custody and Mother primary physical custody of their minor son A.M. ("Child"), born in May 2005.  After review, we affirm the trial court's order.

The trial court summarized the relevant procedural and factual history as follows:

> [Mother] and [Father] are the natural parents of two (2) minor children, N.M., age 16, and A.M., age 12.  The parties were subject to an existing Custody Order entered by this [c]ourt on December 29, 2008[,] which provided for Mother to exercise primary physical custody of the minor children with Father having rights of partial physical custody.

_____

* Former Justice specially assigned to the Superior Court.

This matter came before the [c]ourt on Father's Petition for Modification of Custody filed on October 24, 2016. Father requested primary physical custody of the minor child, A.M. The issue of custody regarding N.M. is not at issue. This [c]ourt held two (2) days of trial on August 22, 2017, and December 5, 2017.

This [c]ourt entered a Final Order in Custody on January 18, 2018, which granted primary physical custody to Mother. Father was awarded periods of partial physical custody with A.M. on every other weekend of the month from Friday at 7:00 p.m. until Sunday at 7:00 p.m., as well as two (2) non-consecutive weeks of summer physical custody and shared periods of holiday custody. Father filed a Motion for Reconsideration on January 24, 2018, which was denied on January 26, 2018.

On February 15, 2018, Father filed a Notice of Appeal as to the Final Order in Custody. Father simultaneously filed a Concise Statement of Matters Complained of on Appeal, in which he argues that the trial court abused its discretion in failing to grant Father primary physical custody of the minor child, A.M., and lists sixteen (16) specific averments.

Trial Court Opinion ("T.C.O."), 3/16/18, at 1-2.

Notably, during the two-day hearing, the court conducted *in camera*, individual interviews of Child, Child's older sibling, N.M., and Father's girlfriend's seventeen-year-old daughter, D.L.C., who currently resides in Father's home. Additionally, Father and Mother, who were present and represented by counsel, both testified. Father also presented the testimony of his girlfriend, A.M.C., Paternal grandmother, M.F., and Clinical Director of Catholic Social Services, Erin McClay, who performed a drug and alcohol evaluation of Mother in August 2017 and was accepted as an expert witness in the field of drug and alcohol assessments. Mother presented the testimony of her fiance', J.A.

Moreover, by way of further background, in its order entered January 18, 2018, the court set forth the following findings of fact:

## **FINDINGS OF FACT**

1. Plaintiff, [Mother] and Defendant, [Father] are the natural parents of two (2) minor children, N.M., age 16 and A.M.[,] age 12.

2. The parties are subject to an existing Custody Order entered by this [c]ourt on December 29, 2008[,] which adopted the terms of a Memorandum of Understanding between the parties at a Mediation Orientation held on December 9, 2008.

3. The December 29, 2008 Custody Order provides generally for Mother to exercise primary physical custody of the minor children with Father having rights of partial physical custody.

4. On October 24, 2016, Father filed his Petition for Modification of Custody in which he requested primary physical custody of A.M.

5. The issue of custody regarding N.M. is not at issue in this proceeding.

6. Two (2) days of custody trial were held in this matter on August 22, 2017 and December 5, 2017.

7. Mother appeared at trial with legal counsel, Robert Reno, Esquire.

8. Father appeared at trial with legal counsel, Ashley Zimmerman, Esquire.

9. The [c]ourt accepted the [*in camera*] testimony of A.M. and N.M.

10. As is this [c]ourt's long-standing policy, we do not address the specific testimony of the minor children in this Order so as not to disclose to the parties their children's testimony.

11. The children's [*in camera*] testimony was conducted under oath and recorded for appellate purposes if needed.

12. An additional minor child, D.C.[,] testified at the August 22, 2017 custody trial on behalf of Father.

- 3 -

13. D.C. is the seventeen (17)[-]year[-]old child of Father's paramour, [A.C.].

14. D.C.'s testimony was likewise conducted under oath and recorded.

15. [A.C.] and D.C. live with Father [in] Milford, Pike County, Pennsylvania.

16. D.C. and A.M. have a good relationship.

17. Despite the general nature of the December 29, 2008 custody order, Father exercises partial physical custody with A.M. on Sundays until 8:00 p.m. and on Mondays during after school hours.[1]

18. A.M. has his own bedroom in Father's residence.

19. Father and a former paramour own the residence [in Milford].

20. Father has lived at this residence for the past eight (8) years.

21. Father's home is located in the Delaware Valley School District.

22. Father had temporary physical custody of A.M. for approximately three (3) months while Mother was incarcerated in the Pike County Jail for a criminal proceeding.

23. During this time, A.M. attended school in the Delaware Valley School District.

24. Father is employed by the United States Department of Homeland Security.

---

[1] Despite the nature of Father's physical custody as described, Father testified that this schedule had been in effect for approximately five months but was different in the summer. Notes of Testimony ("N.T."), 8/22/17, at 5. Further, while Mother testified to a lack of regular overnight physical custody for Father, as acknowledged by Mother, Father had exercised overnight physical custody of Child since 2009, indicating that Father had Child "one or two nights a week." N.T., 12/5/17 a.m., at 99.

25. Father is presently on suspension from that employment pending finalization of internal review of that agency based on criminal charges that were filed against Father and which were subsequently dismissed.[2]

26. Father reported seventeen (17) years of employment with the federal government.

27. Father does not exercise any physical custody with [regard to] N.M.

28. Father and N.M. do not have any relationship at the present time and Father is not seeking any physical custody rights with regard to N.M.

29. Father expressed his love nevertheless for N.M. and a willingness to engage in counseling sessions with N.M. to rehabilitate their relationship.

30. Father acknowledged that he has strained relations with Mother.

31. Father asserted that A.M. has missed a lot of time from school while in the primary physical custody of Mother.

32. Father follows A.M.'s school progress on PowerSchool.

33. A.M.'s PowerSchool report for the 2016-2017 school year reflected sixty-five (65) absences.

34. N.M.'s PowerSchool report for the 2016-2017 school year reflected fifty-three (53) absences.

35. Father expressed concern for Mother's ability to properly care for A.M. due to intoxication and failure to abide by prior court orders.

36. In 2009, Mother was court ordered to attend an in-patient rehabilitation facility.

37. Father claims that Mother did not comply with that court order.

---

[2] Upon review, it appears that, by the hearing on December 5, 2017, Father's employment with the Department of Homeland Security was reinstated. N.T., 12/5/17 a.m., at 102.

38. In 2016, Mother became incarcerated following a probation violation.

39. Father obtained temporary, emergency physical custody of A.M. while Mother was incarcerated.

40. Father expressed a willingness to co-parent with Mother.

41. Father facilitated visits between A.M. and Mother at the Pike County Jail during the time of her incarceration.

42. Father has an excellent relationship with A.M. and engages in various activities with said child including fishing, football, outdoor activities and boating.

43. [A.C.] is available to provide care for A.M. when Father is not at home or available.

44. Father disciplines A.M. for poor behavior by taking things away from him and talking to him.

45. Father seeks primary physical custody of A.M.

46. Father indicated that he is willing to drive A.M. to and from school at Wallenpaupack Area School District[,] if awarded primary physical custody.

47. Father admitted that A.M. was involved in a minor altercation at the Delaware Valley School District during the limited time the child was enrolled there over an argument involving another student.

48. Father stated that A.M. has had several in school suspensions while enrolled in the Wallenpaupack Area School District.

49. Father's criminal charges, as discussed above, resulted in his suspension from work without pay.

50. Father identified [C.H.] as his former girlfriend who also owns an interest in the real property he resides in.

51. [A.C.] moved into Father's residence in September 2016.

52. Father reported that he drinks alcohol once or twice per week usually being a glass of wine or a beer.

53. Father made one report to Pike County Children and Youth based on an allegation that Mother had hit A.M. on the head with a hairbrush.

54. Father stated that said report was determined to be unfounded.

55. Father is not making any abuse allegations about Mother regarding this custody proceeding.

56. Father estimated the distance between the parties' residences as twenty (20) minutes.

57. [A.C.] is Father's paramour and resides with Father and her child, D.C.

58. [A.C.] is employed by [W.T.] and [C.R.].

59. [A.C.] reports having a good relationship with A.M.

60. [A.C.] can assist and is willing to do so with care for A.M.

61. [A.C.] testified that Father does not drink alcohol to excess and is not violent.

62. [M.A.F.] is the mother of Father, resides in Carmel, New York and supports Father's claim for primary physical custody.

63. Erin McClay testified on behalf of Father as an expert witness in the field of drug and alcohol assessments.

64. Ms. McClay has long been employed at Catholic Social Services and has conducted numerous drug and alcohol assessments through the years.

65. Ms. McClay received an Order from this [c]ourt for a drug and alcohol assessment of Mother as part of these custody proceedings.

66. Ms. McClay conducted an evaluation of Mother on August 15, 2017.

67. Mother had two (2) follow up appointments with Ms. McClay on August 17, 2017 and August 18, 2017.

68. The aforementioned evaluation consisted of an interview of Mother.

69. Catholic Social Services had conducted three (3) prior drug and alcohol evaluations of Mother.

70. Ms. McClay described Mother on August 15, 2017 as being nervous and shaky.

71. Ms. McClay stated that Mother smelled of alcohol during the appointment on August 17, 2017, tested negative for alcohol on August 15, 2017 and tested positive for alcohol on August 18, 2017.

72. Ms. McClay recommended that Mother receive out-patient counseling for drug and alcohol issues[,] including individual or group sessions.

73. According to Ms. McClay, Mother initially agreed to the counseling and then called Catholic Social Services to state that she didn't want to participate any further.

74. Ms. McClay identified being provided with a history of a suicide attempt by Mother in 2016[,] which Mother denied.

75. After evaluations by Catholic Social Services in 2015 and 2016, that agency did not recommend any further treatment for Mother at those times.

76. Mother's positive alcohol test on Friday, August 18, 2017 occurred at 4:00 p.m. and registered a reading of 0.044 blood alcohol content.

77. Mother told Ms. McClay that she had one glass of wine at 2:00 p.m. on August 18, 2017 prior to coming in for her appointment.

78. Ms. McClay opined that Mother does not acknowledge that she has a problem with alcohol.

79. [J.A.] is the fiancé of Mother.

80. [J.A.] has resided with Mother since March of 2017.

81. [J.A.] has two (2) minor children ages 12 and 6.

82. [J.A.] testified that his children get along well with A.M. and N.M.

83. [J.A.] stated that while Mother drinks alcohol he has never seen her intoxicated.

84. Mother's residence consists of four (4) bedrooms and two (2) bathrooms.

85. The residence is a bi-level home located in [a] private residential community and within the Wallenpaupack Area School District.

86. [J.A.] is employed as a quality assurance operator.

87. [J.A.]'s children get along well with Mother.

88. [J.A.] testified that A.M. suffered a concussion injury at a [] school football practice in September 2017.

89. Father picked A.M. up from school on this date, informed Mother of the situation and transported A.M. to the hospital for treatment.

90. [J.A.] acknowledged [his] prior convictions for driving under the influence approximately twenty (20) and twelve (12) years ago[,] respectively.

91. [J.A.] expressed concern about A.M.'s behavior at Mother's house after he returns from a period of physical custody with Father.

92. [J.A.] is also employed as a driver for Uber.

93. He described Mother as having one (1) drink of alcohol when they go out socially.

94. Mother's parents own the home in which Mother, [J.A.] and the children reside.

95. [J.A.] acknowledged involvement in a prior protection from abuse case in Lackawanna County in 2015.

96. [J.A.] reported no history of drug or alcohol abuse as well as no mental or physical condition that would affect his ability to provide care for the minor children.

97. Mother resides [in] Lords Valley, Pike County, Pennsylvania.

98. Mother described A.M. and N.M. as having a normal sibling relationship.

99. N.M. is a senior in high school and is in the process of applying to colleges.

100. Mother's mother resides in Yonkers, New York.

101. Mother acknowledged that the [] home she resides in is owned by her mother.

102. Mother and the minor children have lived in this same home for approximately ten (10) years.

103. A.M. has attended the Wallenpaupack Area School District since kindergarten[,] with the brief exception of his enrollment in the Delaware Valley School District while his Mother was incarcerated.

104. A.M. is presently in seventh (7th) grade.

105. Mother described A.M.'s grade[s] as average and stated that the child has missed twenty-two (22) days of school[,] with fifteen (15) being doctor excused, five (5) being excused for other reasons and two (2) being unexcused.

106. Mother described A.M. as being healthy[,] with a prior recent history of a concussion, the flu for a few days and exposure to hoof foot mouth disease as part of the [] school football team.

107. Mother has limited communication with Father.

108. Mother described Father as being verbally abusive and manipulative.

109. Mother claims that this behavior was exhibited in front of the minor children.

110. Mother further claims that Father's verbally abusive conduct has continued since 2008[,] with a recent incident occurring in October 2017 when Father allegedly called Mother various inappropriate names during a custody exchange.

111. Mother testified that she has never attempted to commit suicide.

112. Mother requests that she retain primary physical custody of A.M.

113. Mother identified two (2) reports of abuse against her through Pike County Children and Youth, both of which were unfounded.

114. Mother stated that she provides the primary parental care for A.M. and N.M.

115. Mother testified that while she attends most school events for A.M. that [sic] Father only attends the child's football games.

116. Mother identified A.M.'s pediatrician as Sterling Pediatricians.

117. Mother has scheduled all doctor appointments for A.M. and N.M.

118. A.M. has no special medical needs.

119. Mother acknowledged that she was incarcerated for three (3) months as indicated above.

120. During [Mother's] incarceration, A.M. resided with Father.

121. Father returned A.M. to Mother's physical custody upon [Mother's] release from incarceration and thereafter commenced his custody modification proceeding.

122. Mother's extended family resides in Yonkers, New York.

123. A.M. has friends within [Mother's] community[,] including many members of his football team.

124. Mother described A.M.'s behavior as being different between her house and Father's house.

125. Mother claims that she has tried to facilitate a relationship between A.M. and Father.

126. Mother estimated the distance between the parties' homes as thirty (30) to forty (40) minutes.

127. Mother is not employed outside of the home and is always available to provide care for the minor children.

128. Mother has one (1) prior driving under the influence conviction from 2016.

129. Mother reported no other prior criminal convictions.

130. Mother stated that she had one (1) glass of wine with dinner prior to being tested at Catholic Social Services.

131. Mother denied the consumption of any controlled substances.

132. Mother reported no mental or physical condition that would affect her ability to provide care for the minor children.

133. Mother reported no prior involvement in any protection from abuse case.

134. Mother is agreeable to Father having periods of partial physical custody with A.M. for overnights.

135. Mother's original sentence for the driving under the influence conviction was 72 hours to 6 months of incarceration.

136. Mother subsequently violated the terms of her parole for drinking alcohol and was sentenced on the parole violation to serve three (3) months in the Pike County Jail.

137. Mother reported that she presently possesses a valid Pennsylvania driver's license.

138. Mother has not received any in-patient drug and alcohol treatment since June 2009.

139. Mother received out-patient drug and alcohol treatment from the Marworth facility.

140. Mother denies having a drinking problem.

141. Mother disagrees with Catholic Social Services' recommendation for outpatient drug and alcohol treatment.

142. Mother proposed that Father receive partial physical custody of A.M. on every other weekend and requested that said weekends coincide with the weekends when [J.A.]'s children are at their mother's home.

Order, 1/18/18, Findings of Fact, ¶¶ 1-142.

On appeal, Father presents the following issue for our review:

Whether the trial court erred by reaching a conclusion that was manifestly unreasonable by granting Mother primary physical custody of the minor child when it was determined by the trial court that Mother "presents with a serious alcohol problem which she seems to minimize" despite prior orders of the [c]ourt ordering Mother to comply with drug and alcohol treatment?

Father's Brief at 16.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of

record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) *appeal denied*, 635 Pa. 754, 129 A.3d 521 (2016).

This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider in doing so. **See E.D. v. M.P.**, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further, with regard to the custody factors, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.,** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.,** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa.Super. 2014).

In its order, despite a lack of specific reference in doing so, the trial court carefully analyzed and addressed each factor pursuant to Section 5328(a) and the Child's best interests as follows:

**CONCLUSIONS OF LAW**

1. In evaluating custody claims for a minor child, the paramount concern of the [c]ourt is the best interests of the child. [***Swope v. Swope***], 455 Pa. Super. 587, 689 A. 2d 264 (1997).

2. The [c]ourt should base its decision on all factors that have a legitimate affect on the child's physical, intellectual, moral and spiritual well[-]being. [***Swope v. Swope***], 455 Pa. Super. 587, 689 A. 2d 264 (1997).

3. In the process of determining the best interests of the minor child, the [c]ourt is required to consider and weigh, *inter alia*, the enumerated factors set forth in Section 5328 of the Pennsylvania Custody Act. 23 Pa. [C.S.A.] §5328.

4. Despite their conflict and limited communication, Mother and Father are equally likely to encourage and permit frequent and continuing contact between the minor child and the other party.

5. Mother alleged prior incidents of verbal abuse by Father and a recent incident of verbal abuse during a custody exchange.

6. There was no evidence presented of any other alleged acts of abuse or the parties' involvement in any protection from abuse cases.

7. Mother has served as the primary caretaker of A.M. during his life.

8. Mother is not employed outside of the home and is available to provide care for A.M. as needed.

9. Father is employed with the United States Department of Homeland Security.

10. The [c]ourt finds that A.M. needs stability and continuity in his education, family and community life.

11. Mother resides with the minor children, A.M. and N.M.[,] as well as her fiancé, [J.A.,] in [a] private residential community.

12. Mother and the minor children have resided at this home for approximately ten (10) years.

13. The minor children have known this home as their residence throughout most and/or all of their lives.

14. A.M. is enrolled in the Wallenpaupack Area School District.

15. A.M. has attended the Wallenpaupack Area School District since kindergarten.

16. A.M. is well[-]adjusted to the Wallenpaupack Area School District, plays on the [] school football team and has various friends within [Mother's] community who are likewise on the football team.

17. Father resides in [a] private residential community with his paramour, [A.C.] and [A.C.]'s minor child.

18. The minor children, A.M. and N.M.[,] have a good normal sibling relationship.

19. The minor children, A.M. and N.M.[,] testified before the court [*in camera*].

20. The [c]ourt has considered the well-reasoned preference, if any, of A.M. in reaching this custody determination.

21. Mother alleged that Father has engaged in name[-]calling and that A.M.'s behavior is noticeably worse when he returns from a period of physical custody with Father.

22. There is no other evidence of either parent attempting to turn the minor child, A.M.[,] against the other parent.

23. Mother is more likely to maintain a loving, stable, consistent and nurturing relationship with A.M. adequate for his emotional needs.

24. As indicated above, Mother has been the primary caretaker of A.M. throughout his life.

25. A.M. is stable in his present home environment, schooling environment and accustomed to Mother's household routine.

26. Mother is more likely to attend to the daily physical, emotional, developmental and educational needs of A.M.

27. Mother is not employed outside of the home and is available at all times for child[-]care for A.M. and to address his needs as presented.

28. Father is employed outside of his home, but is on suspension presently from said employment and is available to provide child[-]care for A.M. and to address his needs as presented.

29. The parties have a significant level of conflict and distrust.

30. The parties are nevertheless capable of communicating with one another for the purpose of carrying out a physical custody schedule as ordered by the [c]ourt.

31. Mother presents with a serious alcohol problem[,] which she seems to minimize.

32. Despite a prior history of alcohol abuse[,] which has resulted in Mother serving periods of incarceration for a driving under the influence conviction and a violation of the terms of her parole, Mother continues to consume alcohol[,] even doing so on the afternoon of a known test by Catholic Social Services.

33. Should Mother commit a verifiable abuse of alcohol in the future, the current determination of physical custody shall be subject to immediate review for any appropriate changes to the physical custody of A.M.

34. Mother did not report any evidence of prior drug abuse.

35. Father did not report any prior history of drug and/or alcohol abuse.

36. There was no evidence presented of any past or present alcohol or drug abuse by any household member of the parties.

37. There was no evidence presented of any mental or physical condition of either party or any of their household members that would affect that individual's ability to provide care for the minor child.

38. Mother has a prior criminal conviction for driving under the influence.

39. Mother reported no other criminal convictions.

40. Father reported no prior criminal convictions.

41. There was no evidence presented of any prior child abuse committed by either party or any household member.

. . .

Order, 1/18/18, Conclusions of Law, ¶¶ 1-41.

Turning to Father's issue raised on appeal, Father claims that the trial court erred in awarding primary physical custody to Mother. Father's Brief at 23-29. Despite acknowledgment and awareness of Mother's alcohol problem, the trial court placed greater weight on maintaining the familiar and status quo for Child, Father contends. *Id.* at 28-29. Specifically, Father argues:

> According to the [c]ourt's Order of January 18, 2018, the [t]rial [c]ourt places a large weight on the fact that the minor child has primarily resided with Mother and [has] known the present home as [his] residence throughout most and/or all of [his life]. Additionally[,] the [c]ourt finds that A.M. has attended Wallenpaupack Area School District since kindergarten, is well[-]adjusted, has friends, and participates on the football team. Although Father testified that he would be able to facilitate A.M.'s transportation to the Wallenpaupack Area School District from Father's home, the [t]rial [c]ourt rejected that notion.

> These conclusions, combined with Mother's continued alcohol abuse, lead to the inference that the [t]rial [c]ourt made the custody determination in this matter solely on the uprooting of the minor child from the home A.M. has resided in previously. This [c]ourt, by affirmation of the lower court's Order and opinion has determined that analyzing "the possible harm to the child in uprooting him from the care pattern he has known from a young age is not one of the factors the court must analyze when deciding the relocation of a child or the primary custody of a child under 23 Pa.C.S.A. Section 5337 or 23 Pa.C.S.A. Section 5328." Therefore, the trial court should weigh the factors, including the alcohol abuse of a party when determining primary custody of the minor child, but instead placed more weight on the previous custody arrangement of the parties and the pattern of care that was previously in place.

The [t]rial [c]ourt in this present matter seems to acknowledge the gravity of Mother's alcohol problems on the minor child, by concluding that "should Mother commit a verifiable abuse of alcohol in the future, the current determination of physical custody shall be subject to immediate review for any appropriate changes to the physical custody of A.M." The fact that the [t]rial [c]ourt places the care pattern the minor child has previously known over the determination that Mother suffers from a "serious alcohol problem she seems to minimize", constitutes a misapplication of the law and a judgment that is manifestly unreasonable given facts presented and the conclusions of law determined by the [t]rial [c]ourt.

*Id.*

In finding support for its determination with respect to custody, the trial court reasoned as follows:

The primary issue presented in this appeal is whether this [c]ourt abused its discretion by granting primary physical custody A.M. to Appellee. This [c]ourt did not abuse its discretion because it properly applied and weighed the twenty-three statutory factors set forth in the Pennsylvania Child Custody Act in order to determine the best interests of the child, A.M. [*See*] 23 Pa. C.S.A. § 5328.[3]

The Final Custody Order ("January Order") makes abundantly clear that this [c]ourt properly weighed and evaluated all factors to be considered in a custody determination. The Findings of Fact section of the January Order addresses each of the statutory factors in paragraphs 1-142. This [c]ourt relies upon the extensive and thorough application of law contained in the January Order to substantiate the determinations made therein.

For example, Section 5328[(a)](4) instructs the [c]ourt to consider the need for stability and continuity in the child's education, family and community life. The January Order indicates that A.M. has attended Wallenpaupack Area School District, where Mother and A.M. reside, since kindergarten and is presently in seventh grade. [Order, 1/18/18, Findings of Fact,] ¶ 103. The January Order indicates that Mother and A.M. have

---

[3] Section 5328(a) provides for seventeen custody factors.

resided in the same [] residence for approximately ten (10) years. [*Id.* at ¶]¶ 101-102. The January Order indicates that A.M. has many friends, including members of his football team, within [Mother's] community. [*Id.* at] ¶ 123. Furthermore, Mother has served as the primary caretaker for A.M. for most of his life. [*Id.* at ¶]¶ 102 and 114.

Section 5328[(a)](7) instructs the [c]ourt to consider the well-reasoned preferences of the child, based on the child's maturity and judgment. A.M. is twelve (12) years old, and this [c]ourt heard A.M.'s testimony [*in camera*] during trial and considered the preference, if any, of A.M. when making its final decision. [*Id.* at ¶]¶ 11 and 20. Section 5328[(a)](6) instructs the [c]ourt to consider the child's sibling relationships. The January Order indicates that A.M., along with his biological sibling N.M., testified [*in camera*] and that they have a good, normal sibling relationship. [*Id.* at ¶]¶ 18 and 19.

While this [c]ourt relies upon the extensive and thorough application of law contained in the January Order to substantiate the determinations made therein, we would like to address one particular area of concern. Appellant takes issue with this [c]ourt's award of primary physical custody to Mother[,] despite evidence presented that Mother has struggled with alcohol abuse in the past and is not currently participating in alcohol treatment. Concise Statement [at ¶]¶ h-p. However, this [c]ourt noted in paragraph 33 of the Findings of Law section in the January Order, "Should Mother commit a verifiable abuse of alcohol in the future, the current determination of physical custody shall be subject to immediate review for any appropriate changes to the physical custody of A.M." This [c]ourt also noted that there was no evidence presented of any past or present alcohol or drug abuse by any household member of the parties. [J.A.], Mother's fiancé, testified that, while Mother drinks alcohol and consumes one (1) drink of alcohol when they go out socially, he has never seen her intoxicated. [Order, 1/18/18, Findings of Fact, ¶]¶ 83 and 93. [J.A.] has lived with Mother and A.M. since March of 2017.

Finally, this [c]ourt notes that, although both the history of this case and the evidence presented at trial demonstrate that Mother and Father have a high level of conflict between them, the record also demonstrates that both parents maintain a loving, stable, consistent and nurturing relationship with the child. There was no evidence presented of either party attempting to turn the child against the other party. §5328[(a)](8). Appellant has not

offered, and there is no evidence in the record which indicates, that the January Order is manifestly unreasonable or that this [c]ourt abused its discretion. Thorough review of the record indicates that this [c]ourt, after viewing and assessing each witness first-hand during trial, properly applied and weighed the appropriate factors for consideration in a child custody proceeding and made well-reasoned, properly-weighed determinations based on the best interests of the child.

T.C.O. at 3-4.

With regard to the custody factors, we have stated that the trial court is required to consider all of the Section 5328(a) factors in entering a custody order. *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). Critically, as we stated in *M.J.M.*:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added). Further, we have also noted that, while the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors.

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker

when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*Id.*

As we construe Father's claim on appeal, we interpret the issue raised at its core as a dispute to the weight and significance attributed to certain factors by the trial court. In particular, although not stated by Father in reference to specific factors, Father suggests by his argument that the trial court placed greater weight on Section 5328(a)(4), "[t]he need for stability and continuity in the child's education, family life and community life," as opposed to Section 5328(a)(14), "[t]he history of drug or alcohol abuse of a party or member of a party's household." Father's Brief at 28-29; 23 Pa.C.S.A. § 5328(a). However, and significantly, as stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. *See M.J.M.*, 63 A.3d at 339. As such, as we discern no abuse of discretion, we find Father's claim to be without merit.

In the case *sub judice*, the trial court reasonably analyzed and addressed each factor under Section 5328(a). *See* Order, 1/18/18, Conclusions of Law, ¶¶1-41. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see*

**also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630, 632 (Pa.Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(*quoting* **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa.Super. 2005)). After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/18